## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## ALBANY DIVISION

CHRISTOPHER J. EVANS,        *

        Petitioner,       *     CASE NO. 1:04-CV-119 WLS
                             28 U.S.C. § 2255
VS.                   *     CASE NO. 1:02-CR-38-2

UNITED STATES OF AMERICA,   *

        Respondent.     *

## REPORT AND RECOMMENDATION

_____A four-Count Indictment was returned against Petitioner Evans in this Court on December 4, 2002, charging, in relevant Count Three, that he did on the 30th day of August 2002, knowingly and intentionally distribute more than five grams of a  mixture containing cocaine base, also known as crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(3). (R-1).   On May 30, 2003, Petitioner Evans entered into a Plea Agreement with the Government (R-24) and pled guilty to Count Three of the Indictment (R-25).  Subsequent to the preparation and report of a Pre-Sentence Investigation (PSI), Petitioner was sentenced to a term of 188 months imprisonment, Judgment of which was entered on September 16, 2003. (R- 32).

On November 18, 2003, the District Court Clerk's Office received a letter dated November 11, 2003, postmarked November 17, 2003.  (Original in Clerk's file as Tab 33A). The letter stated:

To the U.S. District Court of Middle Georgia. The following pages are a form for my appeal which I put in on September 2, 2003. The first page is a copy of my appeal notice. The rest is my Appendix of forms Model form for Motion Under 28 U.S.C. § 2255. I also sent copies to the following places. United States Court of Appeals for the Eleventh Circuit and Supreme Court of the United States Judiciary Bldg in Washington, D.C. I thank you respectively for your time on any help you may can provide.

Christopher Jerrod Evans
(Pro-Se)

Said letter was entered on the Docket of Petitioner's criminal case as a pro se Notice of Appeal from Petitioner Evans, together with a Motion to Dismiss his former counsel and for Appointment of Appellate Counsel (R-33). On the same date, Petitioner Evans filed a Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255. (R-34). Petitioner Evans elected to withdraw his § 2255 Motion and to proceed with his belated Notice of Appeal. (R-40, 42).

On February 13, 2004, the Eleventh Circuit Court of Appeals dismissed Petitioner's appeal as filed too late to invoke that Court's appellate jurisdiction. (R-46). The Eleventh Circuit Court of Appeals likewise denied Petitioner's Motion for Reconsideration. On July 30, 2004, Evans timely filed a Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 (R-52), and amended the same on October 1, 2004 (R-60).

**Petitioner's Claims**

In his original Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C.§ 2255 (R-52), Petitioner Evans alleged as his **Ground One** that:

2

Petitioner's conviction obtained by plea of guilty was not made voluntarily, intelligently and knowingly with an understanding of the nature and elements of the offense and was otherwise obtained in violation of due process of law as guaranteed by the United States Constitution.

As his **Ground Two,** Petitioner Evans asserts that:

Petitioner's Plea was obtained in violation of the 14th Amendment of the United States Constitution because there was no factual basis for acceptance of said plea by the District Court.

As **Ground Three,** Petitioner Evans continues to attack his plea of guilty, saying:

The Petitioner's plea of guilty is unconstitutional and void in violation of the 5th Amendment to the United States Constitution because the Court lacked jurisdiction to accept the plea.

As **Ground Four,** Petitioner Evans contends:

Petitioner's alleged waiver of his right to appeal his sentence was not knowingly and voluntarily made with the understanding necessary to comport with due process of law as guaranteed by United States Constitution.

In **Ground Five** of his Amended-Additive § 2255, Petitioner Evans claimed:

Petitioner's Plea of guilty was obtained in violation of 6th Amendment Right to Effective Assistance of Counsel as guaranteed by the United States Constitution and counsel was constitutionally ineffective ... .

Among other subparts to Ground Five, Petitioner Evans alleged as Part (F), "Trial counsel failed to pursue a direct appeal of Petitioner's sentence and conviction at the request of the petitioner and otherwise abandoned the Petitioner's rights of a direct appeal.

As his Amended-Additive **Ground Six,** Petitioner Evans contends:

> Petitioner's sentence is unconstitutional because relevant conduct and other findings by the judge violated the Petitioner's Sixth Amendment right to a Jury Trial. *See Blakely v . Washington,* 542 U.S. ___ (2004), *Apprendi v. New Jersey,* 120 S.Ct. 2348 (2000).

## DISCUSSION OF CLAIMS
## AND
## CONCLUSIONS OF LAW

Inasmuch as Petitioner Carswell claims in **Grounds One, Two, Three, and Five,** that his Plea of Guilty was invalid, those claims will be addressed together. As to his Ground One claim, Petitioner Evans states in his Supporting Facts to his Motion that, "Petitioner contends he did not fully understand the charges to which he pleaded guilty and was never advised of all the elements of the charges and offenses to which he pleaded guilty."

The Transcript of the Change of Plea Hearing (R-58) held on May 30, 2003, demonstrates that Petitioner Evans was made fully aware of the elements of the charge against him by the District Judge and that he acknowledged to the Judge that he understood all of his rights in relation thereto.  After determining that Petitioner Evans had attained a High School Graduate Equivalency Diploma and could read, write, and understand the English language  (Id., at p.6), the District Judge further determined through plea colloquy that Evans believed that he understood the nature of the proceedings against him; that he was not under the influence of anything and had no mental condition that would effect his cognitive abilities. (Id., at p. 7).  The plea colloquy further revealed that petitioner had no

questions about the proceedings; that he had received a copy of the indictment and had gone over it with his attorney; that his attorney had explained and discussed with him his legal and constitutional rights; and that he was satisfied with the representation of his attorney in the case. (Id., p.9). After determining that Petitioner Evans had entered into a Plea Agreement with the Government which his attorney had negotiated with his agreement and approval after reading and going over the agreement with his lawyer, Evans advised the court that he believed he understood the Plea Agreement and had no further questions about it, and was not promised anything not contained in the agreement nor was he forced or coerced into entering into the agreement. (Id., pp. 10,11). The District Judge then went meticulously over the charge against petitioner Evans with him in the plea colloquy. He first advised Petitioner Evans that the penalty upon a conviction of the charge contained in Count Three of the Indictment - the Count to which Petitioner had indicated he intended to enter a plea of guilty - was not less than five years in confinement and not more 40 years in confinement, and Petitioner Evans answered affirmatively that he understood that. (Id., p. 13). The District Judge then read Count Three of the Indictment, asking Evans to read the Count along with him and to discuss the nature of the charge. (Id., p.14,15). The District Judge then asked Petitioner if he understood that, before he could be convicted of that offense, the Government would have to prove all the necessary elements of the offense beyond a reasonable doubt; that the Government would have to prove that the offense occurred on or about the date stated in the indictment, in the venue stated in the indictment; that Evans did knowingly and intentionally commit the offense of distribution of the substance alleged in

5

an amount of more than five grams as alleged in the indictment; and that the substance was crack cocaine, the controlled substance as alleged in the Indictment.  (Id., pp. 15, 16). Petitioner Evans affirmed to the District Judge that he understood the offense charged and had no further questions about it. (Id., p. 16).   The District Judge further advised Petitioner Evans that if he continued to plead not guilty, then he would have the right to a jury trial with the assistance of an attorney and the presumption of innocence in his favor; that the burden of proof of his guilt would be entirely upon the Government; that he could remain silent throughout the trial without adverse inference upon his silence; that he could testify or not as he chose; that he would have the right through his attorney to challenge and examine all the Government's evidence and witnesses; and that if he wished to present any defense to the charges, he would have the right to subpoena witnesses or present other evidence at trial; and that if he were convicted he would have the right to appeal his conviction and sentence. Petitioner Evans affirmed to the District Judge that he understood all of these rights. (Id., pp. 17, 18, 19).   The District Judge more than completed a full and fair Rule 11 (Fed. R.Cr.P.) procedure and there is no merit in Petitioner's Ground One.

In his Supporting Facts to **Ground Two,** Petitioner Evans "contends that the record discloses that there was no factual basis for the Court to accept his plea of guilty."  Here again, the record discloses the contrary.   At page 25 of the Change of Plea Hearing Transcript (R-58), the District Judge addressed the Assistant United States Attorney and Petitioner Evans in turn as follows:

Now Mr. District Attorney, at this time if you would state to the

6

Court the facts that the government would expect to present at trial if this case were to go to trial.  Mr. Evans, if you would listen closely, because at the end I will ask you whether you have heard what was stated and whether you would agree whether that would be accurate or not.

Whereupon, the AUSA stated:

The essential facts which would be presented at trial in this matter, Your Honor, are that on August 30th, 2002, a Midsouth Narcotics Task Force confidential informant or CI met with this defendant at a car wash at 16th and 10th Street in Cordele, Georgia.  The CI provided $1160.00 in US currency to the defendant in exchange for which the defendant handed the CI two plastic bags, each containing a crack cocaine cookie, a flat disk-shapped object.   Laboratory analysis confirmed the substance was in fact cocaine base or crack with a net weight of 42 grams.

(Id., at 25, 26).  The District Judge then asked Petitioner Evans whether he had heard what was just stated about the facts of the case by the government, and whether he thought it was a fair statement, to which Petitioner Evans answered in the affirmative in both instances. Petitioner Evans was asked if there was anything he wished to add to the statement, or correct any of what was stated, to which Petitioner Evans answered, "No, sir."  (Id., at 26). The Court then made the finding that there was a factual basis to support a plea of guilty to Count Three of the Indictment, if the defendant wished to enter a plea of guilty as he had indicated.  (Id.).   There is no merit in Petitioner's Ground Two contention.

In his **Ground Three,** Petitioner Evans alleged that the District Court lacked jurisdiction to accept his guilty plea, explaining in his Supporting Facts that the Indictment failed to allege the element of "unlawful," or to "specifically list or state any mixture or

substance described in clause (ii) of 21 U.S.C. § 841(b)(1)(B)(ii)", rendering the indictment void for failing to allege a crime under 21 U.S.C. § 841.

Petitioner's contentions here are contrary to law. "A reference to a statutory section in an indictment necessary carries with it all of the implicit elements of the offense charged under that section." 28A C.J.S. § 224, Drugs and Narcotics. "An averment in (the) indictment that the (charged) activity is 'unlawful' need not be included." *United States v. Miranda,* 494 F.2d 783, 786 (5th Cir. 1974).[1] "An indictment is sufficient for constitutional purposes if it articulates in statutory language the elements of the violation." *United States v. Alvarez - Moreno,* 874 F.2d 1402, 1410 (11th Cir. 1989), *cert. denied,* 494 U.S. 1032, 110 S.Ct. 1484 (1990). "Furthermore, a defendant is not entitled to a bill of particulars with respect to information which is already available through other sources." *United States v. Rosenthal,* 793 F.2d 1214, 1227 (11th Cir.), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377 (1987). *See also United States v. Martello,* 906 F.2d 555 (11th Cir. 1990). There is no merit in Petitioner's Ground Three.

In his **Ground Four**, Petitioner Evans alleged that his Waiver of Appeal was not knowingly, intelligently, and voluntarily made. He adds in his Supporting Facts:

> The Plea Agreement language was confusing. It is true under the terms of the plea agreement's sentence appeal waiver, petitioner could appeal his "sentence under certain circumstances" – however, that statement did not clearly convey to petitioner that he was giving up his right to appeal

---

[1] In **Bonner v. City of Prichard**, 661 F.2d 1206 (11th Cir. 1981) *en banc,* the 11th Circuit Court of Appeals adopted as precedent the decisions of the Former Fifth Circuit issued before October 1, 1981.

under most circumstances.  Further, the waiver did not explain which circumstances where he could appeal his sentence as provided  for by 18 U.S.C. § 3742.

During the plea colloquy at the Change of Plea Hearing (R-58 at p. 10), the District Judge directed the AUSA to produce the Plea Agreement which Petitioner Evans had entered into with the Government.  He then asked Petitioner Evans if the Plea Agreement was reached with his agreement and approval; if he had signed that document; if he had had the opportunity to read and go over it with his attorney; if he believed he understood it; and if he believed that the agreement represented the total of the entire agreement between him and the government, all to which Petitioner Evans answered in the affirmative to the court. (Id.).The District Judge also asked Petitioner Evans  if he had been promised anything outside the agreement to agree to it; if anyone had forced or coerced or threatened him in any way to get him to enter into the agreement; or if he had any questions "at all at this time about anything in that agreement", all to which Petitioner Evans answered, "No, sir."  (Id., at 10, 11).   The District Judge then asked Petitioner Evans  if he had entered into the agreement of his "own free will," to which the Petitioner answered, "Yes, sir." (Id., at 11).

After further discussion of Petitioner's understanding of his rights, the District Judge, in further plea colloquy, stated to Petitioner Evans:

> If you plead guilty, in accordance with the plea agreement you entered into with the government, you waive or give up essentially your right to appeal the sentence in this case if you plead guilty to Count Three, except under some very limited circumstances. . . .  I'll go over those with you at this time.  As part of that, I advise you under certain circumstances, the Court

9

> could give you a longer sentence than the guideline range
> suggests. That's called departing upward. . . . That's a
> circumstance, of course, if the Court were to do that under this
> agreement, you would still have a right to appeal that. . . . You
> always have the right to appeal any allegation of ineffective
> assistance of counsel. . . . Also under certain circumstances,
> the Court could give you a lesser or shorter sentence than the
> guideline range suggest, but in that case, the government could
> appeal. If the government appeals, you would be released from
> any limitations on your right to appeal. You could appeal as
> you could any other time without this agreement.

(Id., at pp.22, 23).    During all of this colloquy, the Judge asked Petitioner Evans if he

understood each of these exceptions to his Waiver of Appeal ( exactly as contained in ¶ G

of his Plea Agreement (R-24)), to which, in each instance, Petitioner Evans answered

affirmatively that he understood. (R-58 at pp. 22, 23). The Court added, "Except for those

circumstances, you are giving up all of your rights to appeal if you plead guilty to Count

Three under this agreement and the Court accepts your plea agreement. Do you understand

that?" The Petitioner answered, "Yes." (Id. at 23).

Waiver of Appeal**,** is binding on the defendant and the court. *See United States v.*

*Howle,* 166 F.3d 1166 (11th Cir. 1999); *United States v. Bushert,* 997 F.2d 1343, 1352 (11th

Cir. 1993). To establish the waiver's validity, it must be shown either that (1) the district

court specifically questioned the defendant about the provision during the plea colloquy, or

(2) it is manifestly clear from the record that the defendant fully understood the significance

of the waiver. *Id. See also Williams v. United States,* 396 F.3d 1340 (11th Cir. 2005). The

district court specifically questioned the defendant about the waiver provision during the plea

colloquy.  There is no merit in Petitioner's Ground Four.

In **Ground Five** of his Amended Motion, Petitioner Evans claimed**:**

> Petitioner's Plea of guilty was obtained in violation of 6[th] Amendment Right to Effective Assistance of Counsel as guaranteed by the United States Constitution and counsel was constitutionally ineffective ... .

He alphabetizes his claims more particularly in his Supporting Facts, as follows:

> (A) Trial counsel failed to object or argue the amount of drugs attributed to petitioner based on the calculation of the sentencing guidelines;
> (B) Trial counsel failed to object to the use of "relevant conduct" to determine sentence as conduct and other findings by the judge violated petitioner's Sixth Amendment right to a Jury trial;
> (C) Trial counsel failed to contest the government's breach where the government failed to move for a downward depature as provided for by the plea agreement;
> (D) Trial counsel failed to argue or object that the petitioner was improperly sentenced as a career offender because his prior felony conviction in Georgia does not qualify as a controlled substance offense for purposes of U.S.S.G. § 4B1.1;
> (E) Trial counsel failed to inform and failed to explain to the petitioner that there was a difference between the plea guidelines and the "relevant conduct" which appeared in the PSI, and otherwise failed to inform the Petitioner that his sentence could be enhanced and/or determined by relevant conduct, that is - for offenses for which the defendant was never tried or found guilty; and
> (F) Trial counsel failed to pursue a direct appeal of Petitioner's sentence and conviction at the request of the Petitioner and otherwise abandoned the Petitioner's rights of a direct appeal. Petitioner requested his attorney to appeal the conviction and sentence but counsel did not do so.

In **Ground Six** of Petitioner Evans Motion, he contends:

> Petitioner's sentence is unconstitutional because relevant conduct and other findings by the judge violated the Petitioner's Sixth Amendment right to a Jury Trial. *See Blakely v . Washington,* 542 U.S. ___ (2004), *Apprendi v. New Jersey,* 120 S.Ct. 2348 (2000).

Petitioner Evans Ground Six involve the same issues as his Ground 5, (A), (B), and (E), may be addressed simultaneously.   The underlying contention of each of these claims is that the calculation in Part A of the PSI determining Evans Offense Level for purposes of arriving at a guideline sentence range amounted to enhancement which were improperly found by the sentencing judge rather than a jury pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348 (2000), and *Blakely v. Washington,* 542 U.S. 296 , 124 S.Ct. 2531 (2004).   The PSI shows that the Probation Officer who prepared it did, in fact, calculate the total amount of cocaine base from the 43 grams to which Petitioner Evans stipulated in his Plea Agreement as shown at ¶ 4 of the PSI, adding the additional amounts of cocaine base from conduct not admitted nor found by jury, to arrive at a total of  71.57 grams under the relevant conduct grouping provisions of U.S.S.G. § 1B1.3(a)(2) at ¶ 15.   In ¶ 16 the Base Offense Level was calculated at **32** under U.S.S.G. § 2D1.1(c)(4), but reduced by **3** points for Acceptance of Responsibility as shown in ¶¶ 22 and 23, for a Total Offense Level under U.S.S.G. § 2D1.1 of **29,** as shown at ¶ 24 of the PSI.

However, as shown at ¶ ¶ 25-30 of the PSI, U.S.S.G. § 2D1.1 was not used in the calculation of Petitioner's sentencing range, because it was trumped by the provisions of

U.S.S.G. § 4B1.1 regarding Career Offenders.  Paragraph 25 of the PSI set out that according to U.S.S.G. § 4B1.1, a defendant is a career offender if (1) he was at least 18 years old at the time the defendant committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) that defendant has at least 2 prior felony convictions of either a crime of violence or a controlled substance offense.  If the offense level for a career criminal from the table listed under Section 4B1.1 of the guidelines is greater than the offense level otherwise applicable, the offense level for the <u>Career Offender Section</u> of the guidelines manual shall apply.

At ¶ 39 of Petitioner's Criminal History Part B of the PSI, it was shown that Petitioner Evans had beeb convicted of  the felony controlled substance offense, Possession of Marijuana With Intent to Distribute, in Dooly County (Georgia) Superior Court on September 28, 1999, and was sentenced to serve an 8-year prison sentence.  In ¶ 41, it was shown that Petitioner Evans had been convicted of the felony controlled substance offenses of Sale of Marijuana and Sale of Cocaine in Crisp County Superior Court on October 27, 2000, and was sentence to serve a concurrent term of eight years.  The PSI shows also that the number of Petitioner's Criminal History Points was of no consequence in his sentence range calculation, because U.S.S.G. § 4B1.1 provides that a career offender's criminal history category in every case shall be VI, as shown in the PSI at ¶ 44.

Therefore, Petitioner's complaint against his attorney,  in regard to his relevant conduct calculations or total drug amount attribution, fails because the calculations under U.S.S.G. § 2D1.1 were not used in Petitioner's case.  Likewise, Petitioner's complaint that

the trial court erred for accepting the "relevant conduct" total drug attribution fails for the same reason.

Petitioner's Ground Six claim inferred that his Sixth Amendment right to a jury tial had been violated when the court found him to be a career offender and his counsel was ineffective for failing to object to that finding. Petitioner's contentions fail.  In *Almendarez-Torrez v. United States,* 188 S.Ct. 1219 (1998), the Supreme Court held that the government need not allege in its indictment and need to prove beyond a reasonable doubt that a defendant had prior convictins for a district court to use those convictions for purposes of enhancing a sentence."  *United States v. Marseille,* 377 F.3d 1249, 1257 (11th Cir.), *cert. denied,* 125 S.Ct. 637 (2004).   In *Apprendi,* the Supreme Court declined to revisit *Almendarez-Torres* and held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi v. New Jersey,* 120 S.Ct. 2348, 2362-63 (2000).

The Eleventh Circuit Court of Appeals held that *Almendarez-Torres* remains the law post-*Booker.  See United States v. Camacho - Ibarquen,* 404 F.3d 1283, 1290 (11th Cir. 2005).  Accordingly, insofar as the district court's enhancement of Petitioner Evans' sentence under § 4B1.1 merely involved a determination that Evans had prior convictions, the enhancement did not implicate *Apprendi, Blakely,* or *Booker,* as those cases exempt prior convictions from the types of facts that must be admitted by the defendant or proved to a jury beyond a reasonable doubt in order to support a sentence enhancement.

14

With the foregoing clarification, it is shown that Petitioner's Ground 5 (A), (B), and (E), together with his Ground Six, regarding the Court's findings of relevant conduct and Sixth Amendment jury trial violation claims, have no merit.

Petitioner Evans' related claim at Ground 5(D) contends that his trial counsel failed to argue or object that the petitioner was improperly sentenced as a career offender, because his prior felony conviction in Georgia (as cited in ¶ 41 of the PSI) "does not qualify as a controlled substance offense for purposes of U.S.S.G. § 4B1.1."   He argues that U.S.S.G. § 4B1.1's definition of 'controlled substance offenses' does not include the word <u>sale</u>, as used in the Georgia Statute, and, "Therefore, the <u>sale</u> of marijuana and cocaine are not proper 'controlled substance offenses' within the meaning of § 4B1.1, applicable to career offender status enhancement." (underlining emphasis added by Petitioner).

A controlled substance offense is "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance ...."   U.S.S.G. § 1B1.2(b). Likewise, 21 U.S.C. § 841(a) provides:

> It shall be unlawful for any person knowingly or intentionally –
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

The definition of a of a valid conviction for federal sentencing guideline purposes is defined by federal , not state law.  *See United States v. Tamayo,* 80 F.3d 1514, 1523 (11th Cir. 1996); *see United States v. Mejias,* 47 F.3d 401, 404 (11th Cir. 1995) ( The definition

of what constitutes a valid conviction for the purpose of includability in Sentencing Guidelines criminal history, is governed by federal law, rather than state law).

Petitioner's argument, that his felony conviction in 2000 for the State Offense of Sale of Marijuana and Sale of Cocaine cannot be used pursuant to U.S.S.G. § 4B1.1 to establish career offender status, is without merit and frivolous.   Trial counsel cannot be found ineffective for failing to raise a meritless issue.

In Section (C) of his Ground 5, Petitioner Evans asserts that trial counsel failed to contest the government's breach of the Plea Agreement by failing to move for a downward departure for acceptance of responsibility is without merit and frivolous, inasmuch as the PSI shows clearly that Petitioner Evans was awarded a 3 point deduction in paragraphs 28 and 29 for Acceptance of Responsibility.   Whether or not the Government moved for the reduction at the Guilty Plea Hearing is immaterial.  This claim is without merit.

In this Section, Petitioner Evans also claims that his counsel was ineffective for failing to argue at the sentencing hearing that the Government breached its duty to move pursuant to U.S.S.G. § 5K1.1 for a downward departure.   First, Petitioner's attorney did raise the issue of the Government's agreement to file a 5K motion for reduction of sentence upon Petitioner's substantial assistance to the government in other cases.   See Sentencing Transcript (R-57 at 24, 25, 26).  The Government had stated that it was not in a position at that time to file a 5K motion, although the defendant apparently stood ready and willing to provide assistance to the Government in regard to other defendant's and other cases.  The opportunity had not presented itself to either the Government or Petitioner Evans to provide

16

such substantial assistance.  Since the filing of the 5K Motion for reduction of sentence is discretionary with the Government and the granting of such a reduction for substantial assistance by the terms of  U.S.S.G. § 5K1.1, is discretionary with the Court, Petitioner Evans cannot show that any assistance he could have provided would have met either the Government 's or the Court's requirement for a reduction.  Therefore, petitioner cannot show either that the Government breach any duty to file a 5K motion or that his counsel's conduct was deficient and worked any difference in Petitioner's sentence.  The transcript shows that, through defense counsel's intervention on this subject and his discussion of Petitioner's willingness to assist, he apparently succeeded in getting the sentencing judge to sentence Petitioner at the low end of the sentencing guideline range, and maintained the hope of a Rule 35 Motion for reduction of sentence in the future.  There is no merit in Petitioner's claim that his attorney was ineffective for failing to object to a 5K motion which only the Government was in a discretionary position to urge at a time when it had no sufficient bases to determine any substantial assistance to present to the court.  There is no merit in Petitioner's claim that the Government breached  the Plea Agreement.

Finally, in Section (F) of his Ground Five, Petitioner Evans alleged:

> Trial counsel failed to pursue a direct appeal of Petitioner's sentence and conviction at the request of the Petitioner and otherwise abandoned the Petitioner's rights of a direct appeal. Petitioner requested his attorney to appeal the conviction and sentence but counsel did not do so.

By making such a claim, Petitioner Evans invoked the *Montemoino* rule that "Absent an express waiver of the right to appeal his sentence, a defendant who pleads guilty and is

17

sentenced under the Guidelines has a right to direct appeal of his sentence. *See United States v. Bushert,* 997 F. 2d 1343 (11th Cir. 1993). . . . an attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal." *Montemoino v. United States,* 68 F. 3d 416, 417 (11th Cir. 1995*).*

Whether or not Petitioner requested of his attorney to file an appeal of his conviction and sentence and whether or not his attorney failed to do so, being issues of fact, an evidentiary hearing was afforded Petitioner Evans on November 2, 2005, and the transcript (R-69) was filed on November 22, 2005.

Facts already shown above from the Guilty Plea Colloquy (R-58) are that Petitioner Evans had entered into a Plea Agreement (R-24) with the Government wherein he had agreed to plead guilty and had also waived all of his rights to an appeal with limited exceptions, both of which had been found to be freely, voluntarily, and understandingly entered by the court. The exceptions to the waiver of appeal were (1) for an upward departure from the recommended guideline sentencing range (which did not happen in Petitioner's case), (2) for ineffective assistance of counsel, and (3) that if the government appealed the sentence in Petitioner's case (which did not happen).

It must further be noted that the District Judge advised Petitioner Evans as to how to invoke his appellate rights, if any. The court stated at the Sentencing Hearing (R-57 at 32), "The Court notes that pursuant to your plea agreement, you have knowingly and voluntarily waived your statutory right to appeal your sentence except for a claim of ineffective

18

assistance of counsel and upward departure for adequacy of Criminal History or upward departure from the guideline sentencing range.  Should you decide to appeal your sentence based on one of these exceptions, you must file a notice of appeal within ten days of judgment being entered in your case.  That may be done by you asking your attorney, Mr. Pickett, to file such a notice for you, or *you may file it personally*; but if it's not filed within that 10 day period, your will lose whatever right to appeal you may have. Do you understand that?"  Petitioner Evans answered, "Yes, sir."

At the evidentiary hearing, Petitioner Evans testified that after he was sentenced to 188 months imprisonment, the Clerk in the courtroom "asked my attorney should I get a card for an appeal.  Because I asked him about the appeal and he was like, no, I'll come to see you." (R-69 at 8).  Petitioner added, "Well, to my understanding, from what he told me after I pleaded guilty, I was supposed to have came back like a year later for a Rule 35 and stuff." Petitioner was then asked, "[D]id you ask Mr. Pickett to do anything else for you?", to which he replied, "The appeal.  I mean, it was like after I got the time, we were still standing right there."  Petitioner said his exact words were, "Was he going to file the appeal?" (Id., at 10). The following colloquy occurred between Petitioner and his new counsel, "Now, because you did not get a reduction from your sentence for assistance, did that cause you to not agree with the time that you received?"

A. Yes, sir.

Q. Okay. And at that moment when you were sentenced, you did not agree with the sentence you got; correct?"

19

A.  Yes, sir.

(Id., at 12).   On cross-examination, Petitioner Evans testified that what he was unhappy about that made him want to appeal was "Time, Just time."  (Id., at 24).  He was asked , "And you thought that you could appeal that just because it was too much?", to which Petitioner Evans answered, "Yes, sir."  The following colloquy also occurred between Mr. Evans and Government'counsel:

Q.  Now, when Mr. Pickett came to see you in the jail before you were, before you pled guilty, did you have discussions with him about the 5K Motion, the downward departure for sentence?

A. Yes, sir. . . .

Q.  What did you base that understanding on that it was his responsibility to file the 5K Motion?

**A.**  Because he kept saying he was, him and Scott, one of them was supposed to set up a meeting with drug agents and stuff from where I'm from.  Then after I got sentenced he was like, I was going to come back, he's going to file the Motion for me to come back after a year under the Rule 35 and get a reduction.

An examination of Petitioner's trial attorney's testimony sheds more light on whether he requested an appeal and whether his attorney failed to file a notice of appeal having been requested to do so.

Attorney Pickett was asked to describe any communication that he had had with Mr. Evans concerning his desire or lack of desire to appeal the sentence.  He answered:

A. I do not recall – of course, it's been a couple of years ago, but I do not recall him asking me to file an appeal.  The day of sentencing, we actually, if I recall correctly, came to Court twice that day.  . . .   I had filed a Motion for Downward Departure based upon, I don't recall exactly the basis of the

> Motion, but it was somewhat creative I thought.  We tried to avoid the career
> criminal classification.   . .
> We came back in the afternoon, and ultimately he (the judge) denied the
> Motion.   I don't recall Mr. Evans indicating to me that he wanted to appeal.

(R-69 at 36).   Mr Pickett said that he did hear Petitioner Evans testify about the 5K, which

was "our primary focus in this case." (Id., at 37).   Mr. Pickett was then asked the following:

> Q. Did you  have any communication with Mr. Evans or his family in regard
> to a possible reduction in sentence after the date of sentencing
>
> A. As far as the Rule 35, that possibly did happen. Yes. . . . I do recall we left
> sentencing with that hope.

(Id., at 39).   On re-cross-examination, Attorney Pickett was asked, "Now, but you do not

recall him asking you to appeal?", to which he answered, "I do not recall that, no."

(Id., at 48).

From the totality of the Petitioner's testimony, it appears most probable that he has

confused the possibility that the Government would file a 5K guideline motion with the Rule

35 Motion for Reduction of sentence for cooperation subsequent to sentencing.  He has not

carried his burden of proving by a preponderance of the evidence that he actually timely

asked his attorney to file an appeal for him.  His attorney's testimony and concern with

reducing Petitioner's sentence through a guideline 5k motion or a Rule 35 Motion For

Reduction of Sentence upon substantial assistance to the government after sentencing

appears more credible.

The Supreme Court held in *Roe v. Flores - Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029

(2000) that:

> In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052
> (1984), we held that criminal defendants have a Sixth
> Amendment right to "reasonably effective" legal assistance, id.,
> at 687, 104 S.Ct. 2052, and announced a now-familiar test: A
> defendant claiming ineffective assistance of counsel must show
> (1) that counsel's representation "fell below an objective
> standard of reasonableness," id, at 688, 104 S.Ct. 2052, and (2)
> that counsel's deficient performance prejudiced the defendant,
> id., at 694, 104 S.Ct. 2052.  Today, we hold that this test applies
> to claims, like respondent's, that counsel was constitutionally
> ineffective for failing to file a notice of appeal.

The *Roe* Court queries, "Is counsel deficient for not filing a notice of appeal when the

defendant has not clearly conveyed his wishes one way or the other?"  (*Id*.).  The Court

continued:

> We [] reject a bright-line rule that counsel must always consult
> with the defendant regarding an appeal.  We instead hold that
> counsel has a constutionally imposed duty to consult with the
> defendant about an appeal when there is reason to think either
> (1) that a rational defendant would want to appeal (for example,
> because there are nonfrivolous grounds for appeal), or (2) that
> this particular defendant reasonably demonstrated to counsel
> that he was interested in appealing.   .  .  . Although not
> determinative, a highly relevant factor in this inquiry will be
> whether the conviction follows a guilty plea, both because a
> guilty plea reduces the scope of potential appealable issues and
> because such a plea may indicate that the defendant seeks an
> end to judicial proceedings.  Even in cases when the defendant
> pleads guilty, [counsel] must consider such factors as whether
> the defendant received the sentence bargained for as part of the
> plea and whether the plea expressly reserved or waived some or
> all appeal rights.  Only by considering all relevant factors in a
> given case can [counsel] properly determine whether a rational
> defendant would have desired an appeal or that the particular
> defendant sufficiently demonstrated to counsel an interest in
> appeal.

(*Id.,* at 480).   Petitioner's counsel was in the exact situation as outlined by the *Roe* Court.

22

His client had pled guilty and had waive all of his right to appeal except on the ground of ineffective assistance of counsel, and he did not indicate to counsel that he was interested in raising ineffective assistance on appeal.  To the contrary, he told the trial court that he was satisfied with his counsel's representation on his behalf in counsel presence.  He received a sentence of 188 months, at the low end of the guideline range and well within the 40 year maximum sentence to which he knew he was at all times exposed.

Petitioner Evans has neither carried his burden of proof of ineffective assistance of counsel, nor has he shown that he was prejudiced in any way.  His evidence that he ever requested an appeal of his conviction and sentence is vague and unpersuasive.

**WHEREFORE, IT IS RECOMMENDED** for all of the foregoing legal reasons that Petitioner's Motion To Vacate, Set Aside, or Correct his Sentence Pursuant to 28 U.S.C. § 2255 be **DENIED.**  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 10th day of January 2006.


S/  G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

23